UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DARRIN E. KEATON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 1:16-cv-3074-WTL-DML ) |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,[1] | ) ) ) ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Darrin E. Keaton requests judicial review of the final decision of the Defendant, Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Keaton's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The Court, having reviewed the record and the briefs of the parties, rules as follows.

### I.  APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill automatically became the Defendant in this case when she succeeded Carolyn Colvin as the Acting Commissioner of Social Security on January 23, 2017.

work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b).[2] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the Administrative Law Judge's ("ALJ's") decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is

---

[2]The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

not required to address every piece of evidence or testimony presented," he must "provide an accurate and logical bridge between the evidence and [his] conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

## II. BACKGROUND

On July 15, 2013, Keaton protectively filed for DIB and SSI, alleging disability as of January 1, 2013, due to chronic pulmonary disorder ("COPD") and a hip replacement. His application was denied initially and upon reconsideration.

On June 9, 2015, a video hearing was held before an ALJ. An impartial vocational expert also appeared and testified at the hearing. The ALJ issued her decision denying benefits on June 19, 2015. On September 12, 2016, the Appeals Council denied Keaton's request for review and he timely filed this appeal.

## III. THE ALJ'S DECISION

At step one, the ALJ determined that Keaton had not engaged in substantial gainful activity since his alleged disability onset date. The ALJ found that Keaton met the disability insured status requirements of the Act (for purposes of DIB) through December 31, 2017. At steps two and three, the ALJ concluded that Keaton suffered from COPD, but that this impairment did not meet or medically equal the severity of a listed impairment. At step four, the ALJ determined that Keaton had the residual functional capacity ("RFC") to perform a light range of work. Specifically, the ALJ determined Keaton's RFC as follows:

> The Claimant is able to lift/carry twenty pounds occasionally and ten pounds frequently; sit about six of eight hours; and stand/walk about six of eight hours. He can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant should not work around unprotected heights. He should avoid

3

> concentrated exposure to extreme heat, extreme cold, vibration, and pulmonary irritants (e.g. fumes, odors, dust, gases, and poor ventilation).

R. at 21 (citation omitted). The ALJ concluded that Keaton was unable to perform his past relevant work, but found at step five that a significant number of jobs existed in the national economy that Keaton could perform. Accordingly, the ALJ concluded that Keaton was not disabled as defined by the Act.

## IV. DISCUSSION

The medical evidence of record is aptly set forth in Keaton's brief (Dkt. No. 15) and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

### A. Severity of Hip Pain

Keaton first argues that the ALJ's finding that his hip pain was non-severe is not supported by substantial evidence. The ALJ made the following determination relating to Keaton's hip pain:

> Per testimony, the claimant is status post remote hip placement in 2000 and reported right hip pain [at an] August 2013 consultative physical examination. Though he had decreased forward flexion in his lumbar spine, he had mostly normal findings otherwise. Although he sometimes uses a cane he said, he denied a history of falling, and per testimony, the cane was not prescribed. The claimant has not received any significant treatment for this condition. Though he testified that he could not afford physical therapy, notes do not indicate that he sought any free or low cost care or that treatment was denied. The overall record lacks indication that a hip issue causes more than a slight work limitation; therefore, it is nonsevere [sic].

R. at 20 (citations omitted).

An impairment is non-severe only when the impairment is so slight that it has no more than a de-minimis effect on the ability to perform basic work activities. Social Security Ruling 85-28. "An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities." 20 C.F.R 404.1521(a) and 416.921(a).

4

"The Step 2 determination is 'a *de minimis* screening for groundless claims' intended to exclude slight abnormalities that only minimally impact a claimant's basic activities," *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (quoting *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016)); *see also Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016). The Seventh Circuit has categorized errors in determining an impairment's severity as harmless as long as the ALJ otherwise finds one severe impairment, continues through the steps in the evaluation process, and "consider[s] all of [the claimant]'s severe and non-severe impairments, the objective medical evidence, [the claimant's] symptoms, and her credibility when determining her RFC immediately after step 3." *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015); *see also Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) ("Deciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even *one* severe impairment. Here the ALJ categorized two impairments as severe, and so any error of omission [at Step 2 regarding the severity of other impairments] was harmless.") (citations omitted).

The Court need not determine whether the ALJ erred in determining the severity of Keaton's hip pain because the ALJ concluded that Keaton's COPD constituted a severe impairment. After this finding, the ALJ crossed step two's threshold and continued the evaluation process. If the ALJ erred in determining the severity of Keaton's hip pain, such error is harmless because the ALJ considered that impairment, along with all of Keaton's other severe and non-severe impairments, in making the RFC determination.

### B. Weight Given to Treating Source

Keaton further argues that the ALJ failed to give adequate weight to the opinion of his treating physician, Dr. Abboud Kawak, and failed to comply with 20 C.F.R. § 404.1527 to

5

evaluate Dr. Kawak's assessment of Keaton's limitations. An ALJ must give a treating physician's opinion controlling weight if it is both "(1) supported by medical findings; and (2) consistent with substantial evidence in the record." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)). If the ALJ finds that the opinion is not entitled to controlling weight, the ALJ must still assess the proper weight to give to the opinion. *See id.* This requires consideration of several factors, including the "length, nature, and extent of the physician and claimant's treatment relationship, whether the physician supported his or her opinions with sufficient explanations, and whether the physician specializes in the medical conditions at issue." *Id.* (citations omitted).

> The ALJ summarized Dr. Kawak's opinion on Keaton's limitations as follows:
>
> On May 15, 2015, Dr. Kawak, M.D., pulmonologist, opined that the claimant had work precluding limitations for all jobs. Specifically, the claimant had severe COPD and that he could sit for less than 2 hours in an 8-hour day; stand/walk for less than 2 hours in an 8-hour day; would take unscheduled breaks every 25 minutes; rarely lift/carry less than 10 pounds; rarely twist and stoop; and never crouch/squat or climb. He should avoid concentrated exposure to perfumes; avoid moderate exposure to cigarette smoke; and avoid all exposure to extreme cold, extreme heat, high humidity, wetness, soldering fluxes, solvents/cleaners, fumes, odors, gases, dust, and chemicals. His symptoms of shortness of breath, orthopnea, chest tightness, wheezing, rhonchi, episodic acute bronchitis, episodic pneumonia, and coughing would frequently interfere with attention and concentration. The claimant was incapable of even low stress work and would miss more than four days of work per month.

R. at 25-26 (citation omitted). The ALJ's discussion of Dr. Kawak's opinion is as follows:

> The opinion is afforded little weight, as it is inconsistent with Dr. Kawak's own treating notes and the overall record evidence. Namely, the claimant did not require significant treatment and was most recently told to follow up in four months. No evidence indicates that the claimant required more than conservative treatment; he was to stop smoking. It would seem reasonable that were the claimant limited to the extent noted, Dr. Kawak may have referred him for additional treatment or evaluation, which is not shown here. Notably the statements are inconsistent with the claimant's daily activities, including that the claimant takes no extra ordinary precautions at home, nor has oxygen use been noted, fortunately; he said he does his own laundry; he shops, and necessarily is

6

> exposed somewhat to perfumes, odors, and environmental conditions. No evidence indicates that the claimant requires a sterile isolative existence per the opinion of Dr. Kawak. To the extent that the findings are cautionary, to impress on the claimant the seriousness of his condition and that he needs to stop smoking is given some consideration by the undersigned. The opinion appears to be overly sympathetic to the claimant, as Dr. Kawak, is his long-term treating pulmonologist. Regardless, such extreme limitations are not supported by the overall record. Though Dr. Kawak is a treating source, opinions as to disability that are not well supported are not entitled to controlling weight.

R. at 26 (citations omitted).

The ALJ mainly discounted Dr. Kawak's opinion because it conflicted with his own treating notes and only recommended "conservative treatment." R. at 26. Although a treating physician's opinion will only be given controlling weight when supported by medical findings and the substantial evidence in the record, *Elder*, 529 F.3d at 415, the ALJ fails to identify any actual conflicting prior treatment notes, much less state how any such notes could render Dr. Kawak's most recent opinion incredible. Indeed, Dr. Kawak, who is Keaton's long-term pulmonologist, administered a pulmonary function test five days before providing his assessment of Keaton's limitations, which revealed a below listing level FEV1 pre-bronchodilator score and a marginally above listing level post-bronchodilator score. Moreover, the ALJ, who is not a doctor, fails to define exactly what is meant by "conservative treatment" and how that treatment conflicts with the limitations set forth by Dr. Kawak. These errors require remand.

On remand, the ALJ should carefully examine the record to ensure that any reasons provided for not affording Dr. Kawak's opinion controlling weight are actually supported by the record. An ALJ may not simply ignore evidence in the record that does not support his rationale for discounting a treating physician's opinion. *See Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) (explaining that the Seventh Circuit has "repeatedly forbidden" ALJs from cherry-picking only the medical evidence that supports their conclusion); *Moore v. Colvin*, 743 F.3d 1118, 1124

7

(7th Cir. 2014) ("The ALJ simply cannot recite only the evidence that is supportive of her ultimate conclusion without acknowledging and addressing the significant contrary evidence in the record."). A more thorough analysis is required on remand. The ALJ also shall reevaluate her findings regarding Keaton's credibility after reassessing the weight to be given to Dr. Kawak's opinion.

## V. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED AND REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 1/10/18

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication